IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **M.R. and J.R., Parents of minor** | : | **CIVIL ACTION** |
| **child, E.R.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **NO.  11-2235** |
| | : | |
| **RIDLEY SCHOOL DISTRICT,** | : | |
| **Defendant.** | : | |

_____ :

**Goldberg, J.**                                                    **August 13, 2012**

### Memorandum Opinion

   This matter arises under the Individuals with Disabilities Education Improvement Act
("IDEA"), 20 U.S.C. § 1401 et seq., and requires us to interpret what is commonly referred
to as the stay-put provision of that Act, § 1415(j).

   The dispute between the parties initially and primarily involved allegations by
Plaintiffs, M.R. and J.R. (hereinafter "Parents"), that Defendant, Ridley School District
(hereinafter "Ridley"), had violated the IDEA in failing to timely identify their daughter,
E.R., as a child with a disability.  Parents also claimed that Ridley had not developed an
appropriate individualized education program ("IEP") for E.R. and had engaged in
discrimination by failing to comply with E.R.'s § 504 health plan.[1]  In disagreeing with the
Administrative Hearing Officer's conclusions, we resolved the IDEA and § 504 issues in
Ridley's favor.  Ridley Sch. Dist. v. M.R., 2011 WL 499966 (E.D. Pa. Feb. 14, 2011)

_____

[1] § 504 of the Rehabilitation Act prohibits discrimination in federally-funded programs,
including public schools, on the basis of disability.  29 U.S.C. § 794.

(hereinafter "Ridley I").  Parents appealed and the United States Court of Appeals for the Third Circuit recently affirmed this ruling.  Ridley Sch. Dist. v. M.R., 680 F.3d 260 (3d Cir. 2012).

Presently before the Court is Parents' claim that Ridley has failed to fund the pendent placement of E.R. pursuant to § 1415(j) of the IDEA.  Under this subsection, Parents seek payment for tuition and transportation costs from April 21, 2009 (the date of the Administrative Hearing Officer's ruling) through the exhaustion of their appeal in Ridley I. This dispute comes before us through cross motions for judgment on the pleadings, and raises the following issues:

- Whether Parents timely raised their request for stay-put compensation;

- Whether an unfavorable district court decision on the merits of Parents' underlying IDEA claim precludes stay-put relief; and

- If stay-put relief is warranted, whether Parents are entitled to have E.R.'s private school placement funded by Ridley during the pendency of their federal appeal.

For the reasons set forth below, we will grant Parents' motion and deny Ridley's motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

E.R. is a special needs student who attended the Ridley School District through first grade (2007-2008).  After first grade, having rejected Ridley's recommended placement for the 2008-2009 school year, Parents removed E.R. from Ridley and enrolled her in the Benchmark School (hereinafter, "Benchmark"), a private school that specializes in teaching

students with learning disabilities.

On December 4, 2008, Parents filed a due process complaint with the Pennsylvania Department of Education, which primarily challenged Ridley's IEP.  On April 21, 2009, following a multi-day hearing, the Administrative Hearing Officer ruled, inter alia, that Ridley failed to provide an appropriate educational program for E.R. for the 2008-2009 school year, and was thus required to reimburse Parents for tuition at the Benchmark School for that year.   The Hearing Officer also awarded Parents compensatory education for the 2007-2008 school year.

Ridley filed a petition for review in the Pennsylvania Commonwealth Court pursuant to 20 U.S.C. § 1415(i)(2), and Parents subsequently removed the action to this Court.  Parents properly treated Ridley's petition as a complaint,[2] and filed an answer and counterclaims, which alleged that: (1) Ridley had violated the IDEA in failing to provide a free and appropriate education for E.R. in the 2006-2007 academic year; (2) Ridley had violated § 504 of the Rehabilitation Act; (3) Ridley had violated the Americans with Disabilities Act; and (4) Parents were entitled to attorneys' fees and costs on the Hearing Officer's decision and their counterclaims if they prevailed.  Parents' responsive pleading did not assert a counterclaim for funding of E.R.'s private school placement under the stay-put provision.

---

[2] A federal action brought pursuant to the IDEA is "properly characterized as an original 'civil action,' not an 'appeal.'" Jonathan H. v. Souderton Area Sch. Dist., 562 F.3d 527, 529 (3d Cir. 2009).

The parties subsequently filed cross motions for judgment on the administrative record. On February 14, 2011, we granted Ridley's motion, denied Parents' motion and entered judgment in favor of Ridley. Ridley Sch. Dist., 2011 WL 499966. On February 15, 2011, Parents filed a notice of appeal to the Third Circuit. As noted above, the Third Circuit affirmed our ruling on May 17, 2012. Ridley Sch. Dist., 680 F.3d at 260.

After filing their appeal, and through correspondence dated March 17, 2011, Parents requested that Ridley provide compensation for E.R.'s placement at the Benchmark School pursuant to § 1415(j) of the IDEA. Ridley responded shortly thereafter, declining Parents' request. Parents subsequently filed the instant lawsuit on March 29, 2011. In their complaint, Parents seek a declaration that Ridley is obligated to reimburse them for E.R.'s tuition and travel to Benchmark from the date of the Hearing Officer's decision through the exhaustion of appeals. The cross motions for judgment on the pleadings currently before the Court were filed on May 4, 2011 and June 10, 2011.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(c), judgment on the pleadings "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988) (internal quotation marks omitted)). When ruling on a Rule 12(c) motion, the court must view the facts presented in the pleadings and the inferences to

4

be drawn therefrom in the light most favorable to the non-moving party.[3] Jablonski, 863 F.2d at 290-91.

## III.   DISCUSSION

### A.   20 U.S.C. § 1415(j) - Statutory and Precedential Background

The IDEA mandates that children with disabilities have access to "free appropriate public education" ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). To provide FAPE, school districts are obligated to design and administer a program of individualized instruction that is set forth in an individualized education program, or IEP. Id. § 1414(d). The IEP must be "'reasonably calculated' to enable the child to receive 'meaningful education benefits' in light of the student's 'intellectual potential.'" Shore Regional High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004) (quoting Polk v. Cent. Susquehanna Interm. Unit 16, 853 F.2d 171, 181 (3d Cir. 1988)).

Compliance with the IDEA is monitored by federal review and through procedural safeguards provided to disabled children and their parents. Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 82 (3d Cir. 1996). These safeguards are intended to "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and

---

[3] We note that where, as here, a moving party asserts that the complaint fails to state a claim upon which relief may be granted, the court applies the same standards to its review as those applied in a Rule 12(b)(6) motion. See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). However, because Ridley's motion does not challenge the sufficiency of Parents' complaint, the standard of review is identical for both Parents' and Ridley's motions.

the right to seek review of any decisions they think inappropriate." Honig v. Doe, 484 U.S. 305, 311-12 (1988).  Procedural safeguards include, but are not limited to: the right to challenge the identification, evaluation or educational placement of a child, or the provision of FAPE by filing a due process complaint; the right to an impartial due process hearing on that complaint; the right to bring an action seeking state or federal judicial review of the administrative decision; and the right of the child to remain in his or her current educational placement during the pendency of such proceedings.  20 U.S.C. § 1415(b)(6), (f), (i)(2), (j).

The pendent placement safeguard—or stay-put provision—currently at issue provides, in relevant part, that: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed."  Id. § 1415(j).  The United States Supreme Court has described this language as "unequivocal," in that it plainly states that "the child *shall* remain in the then current educational placement." Honig, 484 U.S. at 323 (internal quotation marks omitted).  The provision functions, in essence, as an automatic preliminary injunction. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996) (citing Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982)).  "Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief."  Id.

In determining what constitutes the student's current placement, courts generally look to the operative placement actually functioning at the time the dispute arose—that is, the placement indicated in the IEP. Id. at 867. However, where, as here, parents have removed their child from a placement and a hearing officer agrees that the change of placement is appropriate, that change of placement "must be treated as an agreement between the State and the parents" for purposes of the stay-put provision.[4] 34 C.F.R. § 300.518(d); see also Raelee S., 96 F.3d at 84, 86 (finding that special appeals panel's ruling in favor of parents must be treated as an agreement of the state and noting that "[w]hile parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position."). Although § 1415(j) does not address which party bears the cost of maintaining the pendent placement, the Third Circuit has held that the provision "requires a school district to pay for a private pendent placement at least through the date of a district court's final order in an IDEA case." J.E. ex rel. J.E. v. Boyertown Area Sch. Dist., 2011 WL 5838479, at *3 (3d Cir. Nov. 21, 2011) (citing Drinker, 78 F.3d at 867 (internal

---

[4] Based on our review of precedent regarding § 1415(j), it appears that the case before us may differ somewhat from other cases in which the stay-put provision is implicated. Here, Parents advocated for change of E.R.'s placement, and then removed her from the school district. It was not until the Hearing Officer's decision in their favor that Parents sought stay-put relief. In other factual scenarios, parents immediately invoke § 1415(j) upon disagreeing with a change of placement—whether it be a new school or a different classroom setting—recommended by a school district. See e.g., Drinker, 78 F.3d at 859. Regardless, the same principles apply to both scenarios.

quotation marks omitted)).

The Third Circuit has also noted that the stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Drinker, 78 F.3d at 864.  Importantly, the purpose of the provision is to prevent disruption of the child's education by preserving the status quo during disputes about the child's placement, L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ., 384 Fed. Appx. 58, 62 (3d Cir. 2010); Ringwood Bd. of Educ. v. K.H.J., 469 F. Supp. 2d 267, 270 (D.N.J. 2006) (citing N. Kitsap Sch. Dist. v. K.W., 123 P.3d 469, 482 (Wash. Ct. App. 2005)), and to "strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." Honig, 484 U.S. at 323.  Parents cannot "lose their stay put protection except by affirmative agreement to give it up." Drinker, 78 F.3d at 868 (in addressing whether parents had waived their stay-put right, the court stated that it found no cases that have interpreted the stay-put provision as being waiveable except by parents' explicit agreement).

**B.  The Parties' Respective Positions**

Parents argue that the Hearing Officer's April 21, 2009 decision in their favor established the Benchmark School as E.R.'s pendent placement, which, by operation of law, triggered Ridley's stay-put obligations.  Parents contend that Ridley is thus liable for the cost of E.R.'s tuition and transportation from the date of the Hearing Officer's decision through

the exhaustion of their appeals.  (Pls.' Br. in Support of Pls.' Mot. for Judgment on the Pleadings 3-6.)

Ridley counters that Parents did not timely raise their claim for pendent placement, arguing that such a claim is barred by res judicata and the statute of limitations, and should have been raised as a compulsory counterclaim under FED. R. CIV. P. 13 in Ridley I.  Ridley also contends that it would be inappropriate under the IDEA to award Parents relief in light of the fact that this Court determined that Parents were not entitled to relief on the merits.[5] Lastly, Ridley argues that the current educational placement should be deemed to be Ridley School District given that Parents' request for stay-put relief occurred after this Court's finding that Ridley did not violate the IDEA.  (Def.'s Br. in Opp'n 5-9.)

Parents respond that res judicata does not apply because the current complaint is not based on the same cause of action as Ridley I.  Parents further argue that their stay-put claim was not a compulsory counterclaim because such claim was not available at the time they filed their answer and counterclaims in the previous suit.  Specifically, Parents contend that there was no dispute over the pendent placement at the time Ridley I was filed, and it was not until Ridley refused to honor its obligation to fund the placement that Parents' stay-put claim became viable.  Finally, Parents assert that the statute of limitations referenced by Ridley does not apply to their claim.  (Pls.' Br. in Opp'n 8-15.)

---

[5] Briefing on this issue was received prior to the Third Circuit's opinion. Presumably, Ridley would point to the Third Circuit decision as further support for their position.

### C.  Parents' Claim Is Not Barred by the Doctrine of <u>Res Judicata</u>.

<u>Res judicata</u>, or claim preclusion, bars a party from bringing a second suit against the same adversary based on the same cause of action as the first suit.  <u>Duhaney v. Att'y. Gen. of the U.S.</u>, 621 F.3d 340, 347 (3d Cir. 2010).  A party seeking to invoke <u>res judicata</u> as a defense must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." <u>Id.</u> (internal quotation marks omitted).  "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." <u>In re Mullarkey</u>, 536 F.3d 215, 225 (3d Cir. 2008).

Here, the first two elements of <u>res judicata</u> have been satisfied: a final judgment on the merits was entered in <u>Ridley I</u>; and both cases involve the same parties.  Therefore, we need only address whether this case and <u>Ridley I</u> involve the same cause of action.

Whether two lawsuits are based on the same cause of action turns on the "essential similarity of the underlying events giving rise to the various legal claims." <u>Duhaney</u>, 621 F.3d at 348 (quoting <u>Lubrizol Corp. v. Exxon Corp.</u>, 929 F.2d 960, 963 (3d Cir. 1991) (internal quotation marks omitted)).  The focal point of this analysis is "whether the acts complained of [are] the same, whether the material facts alleged in each suit [are] the same and whether the witnesses and documentation required to prove such allegations [are] the same." <u>United States v. Athlone Indus., Inc.</u>, 746 F.2d 977, 984 (3d Cir. 1984).  An examination of these factors leads us to conclude that <u>res judicata</u> does not preclude Parents'

request for stay-put compensation.

First, the acts complained of in the two suits are different.  In <u>Ridley I</u>, Parents were dissatisfied with the disability services provided to E.R., and a hearing on this issue challenged whether E.R. was provided with FAPE.  Thereafter, pursuant to § 1415(i)(2)(A), Ridley challenged the Hearing Officer's conclusions that the IEP was deficient.  Conversely, in the case currently before the Court, Parents are challenging Ridley's act of refusing to honor its stay-put obligations under § 1415(j), a separate provision of the IDEA.  While the theory of recovery in both cases is generally premised upon the IDEA, the two suits rely upon different provisions of that statute, requiring two distinct analyses.  See <u>Susquenita Sch. Dist. v. Raelee S.</u>, 96 F.3d 78, 81 n.4 (3d Cir. 1996) (stating that "resolution of [a pendent placement issue] is completely separate from the merits issues which focus on the adequacy of the proposed IEP").

Second, the facts in question in the two cases are different.  <u>Ridley I</u> involved events from Spring 2007 through April 2009, the educational evaluation of E.R., the assistance provided by Ridley during the 2007-2008 school year, the IEP provided for the 2008-2009 school year, the subsequent due process complaint filed by Parents and the Hearing Officer's decision regarding these issues.  The present case does not entail an examination of any of these facts, but seeks only to enforce Parents' rights under the IDEA's stay-put provision.

Lastly, the evidence necessary to maintain the instant action is different than the evidence that was required in <u>Ridley I</u>.  The witnesses and documents to support a § 1415(j)

claim seem to be minimal and, under the present facts, entail the Hearing Officer's decision in favor of Parents, tuition bills from the private placement and evidence related to transportation costs. At oral argument, counsel for Ridley implicitly acknowledged this point when he agreed that the only evidence necessary to obtain stay-put relief was the Hearing Officer's ruling in Parents' favor.[6] On the other hand, <u>Ridley I</u> involved numerous witnesses who testified regarding Ridley's evaluation of E.R.,[7] the IEP designed for E.R. and the services provided to her, exhibits used during the due process hearing and the Hearing Officer's decision.

---

[6] THE COURT:   What would [Parents] have to show me in order to get the stay put compensation? I think it could be just a hearing officer's ruling in [their] favor and a subsequent proceeding in front of me. I mean, if we look at the language, before you answer, it says during the pendency of any proceeding conducted pursuant to this section. Unless there's an agreement, the child should remain in [the] then current placement.

MR. REILLY:   Right. You --

THE COURT:   [They've] got available [the] hearing officer ruling and [they've] got [Ridley's] appeal to me. What more would [they] need, according to you, to have me say [they're] entitled to it?

MR. REILLY:   Well, I don't think [they] need anything else, Your Honor. . . .

(Oral Argument Apr. 4, 2012, p. 12.)

[7] The witnesses included, but were not limited to: Parents, E.R.'s kindergarten teacher, E.R.'s first grade teacher, E.R.'s resource room teacher, Ridley's Director of Special Education and Ridley's school psychologist.

Because the acts complained of, and the material facts and witnesses in the two lawsuits are not the same, we conclude that res judicata does not bar Parents' request for stay-put compensation.

### D.   Parents' Claim Is Not Barred by the Compulsory Counterclaim Rule.

Federal Rule of Civil Procedure 13(a) requires that a pleader assert as a counterclaim any claim that the pleader has against the opposing party that is mature at the time of the pleading and "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a)(1)(A); Am. Packaging Corp. v. Golden Valley Microwave Foods, Inc., 1995 WL 262522, at *3 (E.D. Pa. May 1, 1995). The purpose of this rule is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." S. Constr. Co. v. Pickard, 371 U.S. 57, 60 (1962). Accordingly, the Third Circuit has instructed that the term "transaction or occurrence" be construed liberally to promote judicial economy. Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc., 292 F.3d 384, 390 (3d Cir. 2002).

"For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" Id. at 389 (quoting Xerox Corp. v. SMC Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)). A logical relationship exists "where separate trials on each of [the] respective claims would involve a substantial duplication of effort and time by the parties and the courts."

13

Vukich v. Nationwide Mut. Ins. Co., 68 Fed. Appx. 317, 319 (3d Cir. 2003); see also Bondach v. Faust, 2011 WL 3919917, at *4-5 (E.D. Pa. Sept. 7, 2011) (applying the logical relationship test). "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." Transamerica, 292 F.3d at 390. "Failure to assert a compulsory counterclaim before the related claim proceeds to judgment results in the barring of the counterclaim." Stanton v. City of Phila., 2011 WL 710481, at *4 (E.D. Pa. Mar. 1, 2011) (quoting James E. McFadden, Inc. v. Bechtel Power Corp., 1986 WL 4195, at *3 (E.D. Pa. Apr. 3, 1986) (internal quotation marks omitted)).

Because the compulsory counterclaim rule effectively operates as a waiver, we find at the outset that the rule is inapplicable here. See 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1417 (3d ed. 2010) (noting that, while it is not precisely clear on what authority Rule 13(a)'s compulsory counterclaim bar is based, several courts have relied on theories of "waiver" or "estoppel" as the basis for precluding a second suit on the omitted counterclaim). The Third Circuit has ruled that parents cannot waive their stay-put protection except by affirmative agreement. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 868 (3d Cir. 1996). Because there is no evidence that Parents and Ridley agreed that Benchmark would not be E.R.'s pendent placement for purposes of § 1415(j), Parents did not waive that protection.

In any event, we find that Parents' stay-put claim was not a compulsory counterclaim that needed to be raised in the prior suit. The dispute over Parents' right to stay-put compensation was not mature at the time the pleadings were filed in Ridley I and thus the claim cannot be compulsory. While Parents' right to compensation existed when Ridley I was filed, it was not until Ridley refused to honor its stay-put obligation that Parents' instant claim arose. Further, in comparing the two lawsuits, we conclude that Parents' current claim is not logically related to the claims raised by Ridley in the prior suit. Separate proceedings on the FAPE claims and the stay-put claim would not involve a substantial duplication of effort and time by the parties and the Court because the claims do not involve the same factual or legal issues. As discussed previously, the factual issues in Ridley I focused on events revolving around FAPE, which led to the Hearing Officer's decision and this Court's subsequent review of that decision. The factual issues in the instant matter involve whether Parents are entitled to stay-put compensation. In addition, the legal issues are distinct as the two actions rely upon different provisions of the IDEA.

### E.  Parents' Claim is Not Barred by the Statute of Limitations.

Ridley also asserts that Parents' claim is barred by the statute of limitations set forth in 20 U.S.C. § 1415(i)(2)(B), which requires a party to bring a civil action within 90 days of the date of a hearing officer's decision. The right to bring a civil action under § 1415(i)(2) lies with "any party aggrieved by the findings and decisions" of a hearing officer. 20 U.S.C. § 1415(i)(2)(A).

15

Relying on the statute of limitations provision, Ridley argues that, because the instant action was not filed within 90 days of the Hearing Officer's decision, Parents' claim is time barred.  (Def.'s Br. in Support of Def.'s Mot. for Judgment on the Pleadings 8-9.)  Parents counter that § 1415(i)(2)(B) only applies to actions by a "party aggrieved by the findings and decisions" of a hearing officer, which is not the case here.  Specifically, Parents contend that because the Hearing Officer's decision created an agreement establishing Benchmark as E.R.'s pendent placement, they were not aggrieved by the decision, and the 90-day statute of limitations does not apply to their claim. (Pls.' Reply Br. 1-2.)

We agree with Parents that the statute of limitations in § 1415(i)(2)(B) does not apply to their stay-put claim.  At the due process hearing, the Hearing Officer found in favor of Parents with regard to most of their claims.  Importantly, the Hearing Officer concluded that Ridley failed to provide an appropriate educational program for E.R. for the 2008-2009 school year, which by operation of law, created an agreement between Parents and Ridley that Benchmark was E.R.'s pendent placement.  Because Parents were not aggrieved by the Hearing Officer's decision on this issue, Parents were not subject to the 90-day statute of limitations.

### F.  Parents Are Entitled to Judgment on Their Claim, Including Reimbursement for Tuition Paid During the District Court Proceedings and During the Pendency of Their Appeal.

Having determined that Parents' stay-put claim is not barred under the various defenses asserted by Ridley, we next turn to the merits of their claim.

16

    1.  <u>E.R.'s Pendent Placement is Benchmark.</u>

As previously discussed, the stay-put provision essentially functions as an automatic preliminary injunction.  <u>Drinker v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 (3d Cir. 1996). Once a court determines a student's current educational placement, the party requesting stay-put relief is "entitled to an order without satisfaction of the usual prerequisites to injunctive relief."  <u>Id.</u>

Here, the parties dispute which school is E.R.'s current placement for purposes of Parents' claim.  Parents urge that Benchmark is E.R.'s pendent placement because the Hearing Officer's decision in their favor created a change of placement agreement with the state. (Pls.' Br. in Support of Pls.' Mot. for Judgment on the Pleadings 3-5.) Ridley counters that Ridley School District should be deemed E.R.'s placement given that Parents' request for stay-put protection occurred after this Court's finding that Ridley did not violate the IDEA.  (Def.'s Br. in Opp'n 5.)

We agree with Parents that Benchmark is E.R.'s pendent placement.  Precedent dictates that Ridley's stay-put obligations began once there was state agreement with respect to E.R.'s placement—that is, when the Hearing Officer issued her decision in Parents' favor. <u>See</u> <u>Susquenita Sch. Dist.  v. Raelee S.</u>, 96 F.3d 78, 84 (3d Cir. 1996) ("It is undisputed that once there is state agreement with respect to pendent placement, *a fortiori*, financial responsibility on the part of the local school district follows.")  At oral argument, Ridley acknowledged the creation of this agreement at the time of the Hearing Officer's decision,

but contended that Parents were required to affirmatively seek stay-put relief.[8]   (Oral Argument Apr. 4, 2012, pp. 6-7.)  We do not read § 1415(j) to require parents to request compensation in order for their stay-put protection to begin.  Ridley's interpretation of the provision does not comport with its plain language, which instructs that "the child *shall* remain in [her] then-current educational placement" during the pendency of proceedings.  See 20 U.S.C. § 1415(j) (emphasis added).  Nor is Ridley's position consistent with the

---

[8] Ridley also conceded that, had the stay-put claim been raised as a counterclaim in Ridley I, Parents would have been entitled to stay-put compensation:

| | |
|---|---|
| THE COURT: | . . . [H]ad the parents filed the counterclaim [for stay-put protection], as you say they should have, on June 30th, '09, would you agree that you owe them money under the stay put provision? |
| MR. REILLY: | Yes. |
| THE COURT: | Okay. |
| MR. REILLY: | If the parents had filed the counter -- if the parents had filed a timely counterclaim in the first proceeding then, under [Susquenita School District  v. Raelee S., 96 F.3d 78, 82 (3d Cir. 1996)], they could have requested you to require the district to pay the interim tuition.  They would have requested of you and had you have us respond but you would have been within your rights to grant it under [Raelee S.]. |
| | . . . |
| MR. REILLY: | . . . I believe, under [Raelee S.], ultimately, you would have been obliged to give it to them because that's what [Raelee S.] says. |

(Oral Argument Apr. 4, 2012, pp. 6-7.)

18

underlying policy of the provision, which is to preserve the status quo during disputes regardless of whether parents will ultimately be meritorious.  L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ., 384 Fed. Appx. 58, 62 (3d Cir. 2010).  Once an agreement was created, Ridley was required to honor it.  Parents' failure to request funding until after this Court ruled against them does not obviate Ridley's obligation.

### 2.  Stay-Put Protection Extends to Appeal.

The remaining issue concerns whether stay-put protection continues through the completion of the appeals process.  While the Third Circuit has not yet decided this issue, that court has observed that it is a "difficult question" to resolve.  J.E. ex rel. J.E. v. Boyertown Area Sch. Dist., 452 Fed. Appx. 172, 176 n.2 (3d Cir. 2011).  We agree, particularly in light of the factual scenario before us.

As noted previously, the stay-put provision provides, in relevant part, that: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed."  20 U.S.C. § 1415(j).  It is well-established that § 1415(j) "requires a school district to pay for a private pendent placement at least through the date of a district court's final order."  J.E., 452 Fed. Appx. at 176.  However, there is a split in authority among the federal circuits, as well as district courts in this circuit, regarding whether the stay-put provision applies during the pendency of appeals.

### a. Relevant Case Law

The D.C. Circuit, Sixth Circuit, and district courts in Delaware and the Eastern District of Pennsylvania have held that a school district need not continue to fund a student's pendent placement beyond district court review.  See Andersen v. Dist. of Columbia, 877 F.2d 1018 (D.C. Cir. 1989); Kari H. v. Franklin Special Sch. Dist., 1997 WL 468326 (6th Cir. Aug. 12, 1997) (unpublished opinion); Bd. of Educ. of the Appoquinimink Sch. Dist. v. Johnson, 2008 WL 5043472 (D. Del. Nov. 25, 2008); J.E. v. Boyertown Area Sch. Dist., 807 F. Supp. 2d 236 (E.D. Pa. 2011).

Conversely, the Ninth Circuit and a New Jersey district court have ruled that a school district's stay-put obligation extends through appeal to a circuit court.  See Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036 (9th Cir. 2009); Ringwood Bd. of Educ. v. K.H.J., 469 F. Supp. 2d 267 (D.N.J. 2006).  We review these varying opinions below.

In Andersen v. Dist. of Columbia, 877 F.2d 1018 (D.C. Cir. 1989), the D.C. Circuit denied a request to apply § 1415(j) on appeal.  In reaching this decision, the court found that the statutory language at issue demonstrated that Congress did not anticipate the continuation of stay-put relief through appellate review.  The court noted that, although an appeal is part of a "civil action," Congress did not explicitly include such review as a proceeding under § 1415 and was instead focused on the trial stage of proceedings when it enacted the stay-put provision.  Andersen, 877 F.2d at 1023.

Turning to the policies of the provision, the D.C. Circuit also concluded that application of § 1415(j) beyond district court review would run counter to the provision's purpose of preventing school districts from unilaterally changing the educational placement of students pending completion of the dispute process.  Id. at 1023-24 (citing Honig v. Doe, 484 U.S. 305, 323 (1988)).  The court reasoned that, once a district court rules, a school district's action is no longer unilateral, but carries judicial approval.  Consequently, the "automatic injunction perpetuating the prior placement would not serve the section's purpose."  Id. at 1024.  The Sixth Circuit and the District of Delaware and Eastern District of Pennsylvania cases noted above reached the same conclusion for substantially the same reasons.  See Kari H., 1997 WL 468326 (unpublished opinion); Johnson, 2008 WL 5043472; Boyertown Area Sch. Dist., 807 F. Supp. 2d at 236.

A different outcome was reached by the United States Court of Appeals for the Ninth Circuit in Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036 (9th Cir. 2009).  There, the court held that the stay-put provision applies during the pendency of an appeal.  In examining the statutory language of the IDEA, the court determined that a plain reading of the text supports application of § 1415(j) on appeal.  The court reasoned that, because Congress provided the parties with the option for district court review, it was presumably aware that the parties would be entitled to seek an appeal from a district court ruling.  Joshua A., 559 F.3d at 1038.  In addition, the court relied upon a Department of Education regulation, requiring that the current educational placement be maintained "during the pendency of *any*

21

. . . judicial proceeding," in reaching its decision.  Id. (citing 34 C.F.R. § 300.518(a)).

The Ninth Circuit also focused upon the policy considerations of § 1415(j).  First, it rejected the policy analysis articulated in Andersen, finding that the D.C. Circuit's reliance on Honig v. Doe, 484 U.S. 305 (1988), was misplaced.  Specifically, the Ninth Circuit opined that, while Honig did mention that Congress was aware of the need to prevent school districts from unilaterally changing a student's placement, that issue was "a tangential policy argument" in that Honig involved a potentially dangerous disabled student and the placement issues that arose from that particular situation.  Id. at 1038-39.  Because the facts before the court did not involve a similar exigency, it found Andersen's reliance on Honig's policy rationale unpersuasive.

In further distinguishing Andersen, the Ninth Circuit emphasized that the policy considerations, in fact, favor application of § 1415(j) during appeal.  The court noted that the stay-put provision "acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process" and that "[i]t is unlikely that Congress intended this protective measure to end suddenly and arbitrarily before the dispute is fully resolved."  Id. at 1040.  Relying on similar reasoning, the District of New Jersey court reached the same conclusion.  See Ringwood Bd. of Educ. v. K.H.J., 469 F. Supp. 2d 267, 270 (D.N.J. 2006).

### b.  Statutory Construction

Tasked with interpreting the scope of the stay-put provision, we first examine the statutory language.  In re Phila. Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010).  It is

well-settled that the initial step in interpreting a statute is to determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Valansi v. Ashcroft, 278 F.3d 203, 209 (3d Cir. 2002) (quoting Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir. 2001) (internal citations omitted)).  Where the language of the statute is clear, our inquiry is complete.  In re Phila. Newspapers, LLC, 599 F.3d at 304.  However, if the language is ambiguous—that is, "reasonably susceptible of different interpretations"—we must attempt to discern Congress' intent. Dobrek v. Phelan, 419 F.3d 259, 264 (3d Cir. 2005) (quoting Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co., 470 U.S. 451, 473 n.27 (1985)).

Courts traditionally examine "the legislative history and the atmosphere in which the statute was enacted" to determine congressional intent. United States v. Gregg, 226 F.3d 253, 257 (3d Cir. 2000).  Courts should also "look to the reading [of the language] that 'best accords with the overall purposes of the statute.'" United States v. Introcaso, 506 F.3d 260, 267 (3d Cir. 2007) (quoting Nugent v. Ashcroft, 367 F.3d 162, 170 (3d Cir. 2004)). Additionally, where, as here, the statute at issue is within the scope of an agency's rulemaking and lawmaking authority, that agency's reasonable interpretation should be deferred to in resolving the ambiguity. Mehboob v. Att'y Gen. of the United States, 549 F.3d 272, 275 (3d Cir. 2008); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

### c. Analysis

With the above precepts in mind, and after careful examination of the statutory language, the purposes of § 1415(j) and the Department of Education regulations, we conclude that the stay-put provision applies during the pendency of a federal appeal.

First, we agree with the Ninth Circuit that the plain language of the stay-put provision contemplates an appeal to a circuit court. Section 1415(j) mandates that a child shall remain in his or her current educational placement "during the pendency of any proceedings conducted pursuant to this section." The "section" referred to, § 1415, articulates four kinds of proceedings: (1) mediation; (2) due process hearings; (3) state administrative review; and (4) civil actions for review "in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(e), (f), (g), (i). Although Congress did not explicitly articulate that an appeal is a "proceeding" under § 1415, it seems intuitive that an appeal is part of a "civil action . . . in a district court of the United States." Indeed, 28 U.S.C. § 1291, specifically states that "the courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." In drafting § 1415(j), Congress surely understood that district court review would necessarily include an appeal to a circuit court. As such, reading the language at issue in its ordinary sense, we find it clear that the stay-put provision applies during appellate review.[9]

---

[9] Although the Ninth Circuit did not reach the issue of whether stay-put protection extends to Supreme Court review, for the same reasons stated herein, we conclude that the language of the provision also encompasses such proceedings. While an appeal to the

Even if the language of § 1415(j) does not unambiguously extend stay-put protection through appeal, our reading is nevertheless in accord with the provision's protective purposes. While cutting off stay-put compensation at the district court level arguably achieves § 1415(j)'s purpose to prevent unilateral exclusion of disabled students by school districts, that is just one goal of the provision. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 373 (1985) ("We think *at least* one purpose of [the stay-put provision] was to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.") (emphasis added). The broader policy goal of § 1415(j) is the desire not to disturb a student's educational placement until the statutorily-mandated dispute process has concluded. L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ., 384 Fed. Appx. 58, 62 (3d Cir. 2010); Ringwood Bd. of Educ v. K.H.J., 469 F. Supp. 2d 267, 270 (D.N.J. 2006) (citing N. Kitsap Sch. Dist. v. K.W., 123 P.3d 469, 482 (Wash. Ct. App. 2005)). This purpose would not be achieved by limiting stay-put relief to district court review.

Indeed, refusing to enforce the stay-put provision after a district court ruling and during the appeals process could force parents to choose between maintaining their child in a private school at their own cost—which may or may not be within their financial means—or placing their child back into an educational setting which, depending on the outcome of appeal, could

Supreme Court is not an appeal of right, Congress presumably knew that a civil action brought in federal court could ultimately be reviewed by the Supreme Court.

25

potentially fail to meet minimum legal standards.[10]  The Third Circuit noted this dilemma in Susquenita School District v. Raelee S., where the court stated that, "[w]ithout interim financial support [provided through a motion for stay put], a parent's 'choice' to have his child remain in what the state has determined to be an appropriate . . . placement amounts to no choice at all.  The prospect of reimbursement at the end of the litigation turnpike is of little consolation to a parent who cannot pay the toll at the outset."  96 F.3d at 87.

This undesirable outcome could have been reached under the circumstances of the present case.  If Parents had not been able to afford E.R.'s private school placement, they would have been confronted with the decision to place E.R. back in the Ridley School District even though our decision was subject to reversal on appellate review.  This predicament runs counter to the Third Circuit's view that § 1415(j) represents "Congress' policy choice that all handicapped children, *regardless of whether their case is meritorious or not*, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved."  Pardini v. Allegheny Interm. Unit, 420 F.3d 181, 190 (3d Cir. 2005) (emphasis added) (citing Drinker, 78 F.3d at 864).

Ultimately, we agree with the court in Joshua A. that the "automatic" nature of a stay-put order evidences "Congress's sense that there is a heightened risk of irreparable harm

---

[10] We also note that cutting off stay-put protection after district court review has potential negative consequences in other factual scenarios besides private school placement.  For instance, the stay-put provision could have been invoked during the pendency of an appeal to maintain a child's special services within the school district or to maintain a child's placement in a mainstream rather than a self-contained classroom.

inherent in the premature removal of a disabled child to a potentially inappropriate educational setting" and thus any risk, financial or otherwise, should be placed on the school district, not the parents or child.  559 F.3d at 1040.  While we understand that the Third Circuit has declined to address the issue of whether § 1415(j) applies during a federal appeal, we believe the policy concerns consistently articulated by that court support the conclusion that Congress did not intend stay-put protection to end suddenly before the dispute is finally resolved.  See Raelee S., 96 F.3d at 83.

Lastly, our reading also comports with the Department of Education's reasonable interpretation of the provision.  In implementing § 1415(j), the Department of Education has mandated that a child's placement be maintained "during the pendency of *any* . . . judicial proceeding regarding a due process complaint," not just district court proceedings.  See 34 C.F.R. § 300.518(a) (emphasis added). The broad language used by the Department of Education, noting that the placement be maintained during "any" judicial proceeding, supports our decision that the stay-put provision extends through appeal.

In reaching this conclusion, we have grappled mightily with the practical, or perhaps impractical, implications of our decision.  Although Parents may disagree, we do not view this case as one where a school district turned a blind eye to the disabilities of one of their students.  Rather, Ridley provided significant services to E.R. and was prepared to continue to do so had E.R. remained in the school district.  Ridley has also expended substantial resources defending the FAPE provided to E.R., which has now been challenged through three levels of review.

Ridley's position has been deemed to be correct by the Third Circuit, and absent a reversal by the United States Supreme Court, the sufficiency of Ridley's FAPE will be the law of the case. To now apply the stay-put provision through appeal creates a situation where the prevailing party is nonetheless required to compensate Parents from April 21, 2009 (the date of the Hearing Officer's decision) through to potentially the completion of litigation in the Supreme Court.  As noted by the district court in <u>Boyertown</u>, this type of outcome could appear to have created an absurd result.  <u>J.E. v. Boyertown Area Sch. Dist.,</u>  807 F. Supp. 2d at 240.

Having expressed our frustration, we rule as we do because we are compelled to do so by the statutory language.  Rectifying the dilemma created here, where Ridley, the prevailing party is still obligated to compensate Parents, is, in our view, best left to Congress.